## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| GILBert H.,[1]  ) | |
| ) | |
| Plaintiff,  ) | CIVIL ACTION |
| ) | |
| v.  ) | No. 22-2327-JWL |
| ) | |
| KILOLO KIJAKAZI,  ) | |
| Acting Commissioner of Social Security,  ) | |
| ) | |
| Defendant.  ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾  ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security

denying Social Security Disability Insurance (SSDI) benefits pursuant to sections 216(i)

and 223, Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the

Act).  Finding no error in the Administrative Law Judge's (ALJ) decision, the court

ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C.

§ 405(g) AFFIRMING the Commissioner's final decision.

### I.      Background

Plaintiff protectively filed an application for SSDI benefits on July 13, 2020.  (R.

10, 180).  After exhausting administrative remedies before the Social Security

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ erred in finding his condition did not meet Listing 1.15 and/or 1.16, and in assessing his residual functional capacity (RFC).

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala,

36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past

3

relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999). The court addresses the errors alleged in Plaintiff's Social Security Brief.

## II.  Listings 1.15 and 1.16

Plaintiff argues that he "shows that he meets a listing, showing objective medical evidence that he has degenerative disc disease, he is required to use an electric scooter and suffers from nerve root compression" and therefore the ALJ erred in finding he did not meet a medical Listing. (Pl. Br. 12). The Commissioner argues, on the other hand, that the ALJ found no evidence Plaintiff required the use of a seated mobility device, that finding is supported by substantial evidence in the record, and consequently precludes a finding that either Listing 1.15 or 1.16 are met.

### A.  Standard for Evaluating a Listing at Step Three

The Commissioner has provided a "Listing of Impairments" which describes certain impairments that she considers disabling. 20 C.F.R. §§ 404.1525(a), 416.925(a); see also, Pt. 404, Subpt. P, App. 1 (Listing of Impairments). If a claimant's condition meets or equals the severity of a listed impairment, that impairment is conclusively

presumed disabling.  Williams, 844 F.2d at 751; see Bowen v. Yuckert, 482 U.S. 137, 141 (1987) (if claimant's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled").  However, the claimant "has the burden at step three of demonstrating, through medical evidence, that his impairments 'meet all of the specified medical criteria' contained in a particular listing."  Riddle v. Halter, No. 00-7043, 2001 WL 282344 at *1 (10th Cir. Mar. 22, 2001) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in Zebley)).  "An impairment that manifests only some of [the listing] criteria, no matter how severely, does not qualify" to meet or equal the listing.  Zebley, 493 U.S. at 530.

"The [Commissioner] explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard.  The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" Zebley, 493 U.S. at 532-33 (emphasis in original) (citing 20 C.F.R. § 416.925(a) (1989)). The listings "streamlin[e] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background."  Yuckert, 482 U.S. at 153.  "Because the Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively."  Caviness v. Apfel, 4 F. Supp. 2d 813, 818 (S.D. Ind. 1998).

The ALJ found the criteria of Listing 1.15 and Listing 1.16 are not met:

> because the record does not document (1) a medical need for a walker, bilateral canes, or bilateral crutches or a wheeled and seated mobility device involving the use of both hands; (2) an inability to use one upper

extremity to independently initiate, sustain, and complete work-related
activities involving fine and gross movements and a documented medical
need for a one-handed, hand-held assistive device that requires the use of
the other upper extremity or a wheeled and seated mobility device involve
[sic] the use of one hand; or (3) an inability to use both upper extremities to
the extent that neither can be used to independently initiate, sustain, and
complete work-related activities involving fine and gross movements.

(R. 13-14). Because Plaintiff does not claim he is unable to use either one or both upper

extremities "to independently initiate, sustain, and complete work-related activities

involving fine and gross movements;" 20 C.F.R., Pt. 404, Subpt. P, App.1, §§ 1.15D,

1.16D; the real question in deciding whether Plaintiff's condition meets one of these

Listings is whether Plaintiff meets the criteria in (1) above: a documented medical need

for a wheeled and seated mobility device, and that requires the use of both hands.

The regulations explain what is required to show a medical need for an assistive

device. 20 C.F.R., Pt. 404, Subpt. P, App.1, § 1.00C2b. What is required is a medical

source's report of a physical examination supporting the <u>medical</u> need for the device. <u>Id.</u>

Neither a report of the claimant's statements about his symptoms and limitations nor

findings on imaging or other diagnostic tests is acceptable as a substitute for findings on

physical examination. <u>Id.</u> at 1.00C2. The medical source's "evidence must describe any

limitation(s) in [the claimant's] upper or lower extremity functioning and the

circumstances for which [the claimant] need[s] to use the assistive device." <u>Id.</u> 1.00C6a.

If the claimant uses a wheeled and seated mobility device, the agency requires "evidence

from a medical source describing the type of wheeled and seated mobility device that [the

claimant] use[s] and how [he] use[s] the assistive device including any customizations or

modifications to the assistive device itself or for [the claimant's] use of the assistive device." Id. 1.00C6e.

**B.** **Analysis**

Plaintiff's only argument to suggest that the criteria of paragraph D of Listing 1.15 or Listing 1.16[2] are met is that he

> provides throughout the record that he relies on stools, seats in the bathroom, and an electric scooter to get around, Plaintiff even informed his doctors of this at the outset of his struggle with back pain. (Tr. 390). As such, Plaintiff has provided sufficient evidence to bear the burden of proving that he meets the listing.

(Pl. Br. 12). It is beyond clear that Plaintiff's argument does not meet the criteria of the regulations to show a medical need for his electric scooter as a wheeled and seated mobility device. Moreover, there is no attempt to show that the device requires the use of both hands. Plaintiff has not shown error in the ALJ's finding the criteria of the Listings are not met or medically equaled.

**III.   RFC Assessment**

Plaintiff argues the ALJ erred in assessing an RFC in this case. Plaintiff argues the ALJ failed to connect the dots between the evidence and his conclusions because the evidence cited in support of his assessment is unpersuasive and provided without context. Id. at 16. As an example, Plaintiff points to Exhibit 1F/8 (R. 376), suggests the ALJ relied upon that citation to show normal gait and station, and argues that record "does not

---

[2] Plaintiff does not directly address Listing 1.16 in his Brief but acknowledges there are "only minor differences for requirements for … 'D'" in Listing 1.16. (Pl. Br. 12). The ALJ's rationale as explained above precludes finding the criteria of either Listing 1.15 or Listing 1.16 are met.

say that Plaintiff has normal gait and station, instead, it states directly that Plaintiff

suffers from 'neurogenic claudication,' and the narrative indicates that he has returning

pain in his back, constant throbbing pain, muscle tenderness, and indicates that he is

taking at least seven medications for back pain." (Pl. Br. 16-17) (citing R. 375-77).

Plaintiff cites record evidence suggesting he has back pain and argues the ALJ

"erred by failing to properly evaluate [sic] Plaintiff's subjective complaints of disabling

pain," implying the ALJ did not give specific reasons for rejecting Plaintiff's subjective

complaints and arguing the ALJ failed to apply the three-step standard for evaluating a

claimant's allegations of disabling pain. Id. 17. He argues the ALJ instead found

"without evidence that Plaintiff could not be in pain because he is capable of slowly

doing household chores with the assistance of a chair and frequent breaks." Id. 18 (citing

R. 16). He argues the record evidence is consistent with Plaintiff's allegations of

disabling pain and the ALJ's findings otherwise "are not based on substantial evidence."

Id.

Without a citation to record evidence in this case, Plaintiff cites Bryant v.

Commissioner, 753 F. App'x 637, 643 (10th Cir. 2018) and implies the ALJ here

selectively viewed and misrepresented evidence and this case should be remanded. Id. at

19. Plaintiff argues the ALJ's characterization of his level of treatment as "conservative"

is an understatement because Plaintiff was contemplating surgery and the lumbar epidural

steroid injections he underwent in October, November, and December 2019 did provide

some relief but "he continued to need medication, including pain killers and psychoactive

drugs (hydrocodone, gabapentin) as well as pain relief cream every day." (Pl. Br. 19)

(citing R. 375, 377, 383, 388, 393, 409). He argues,

> Simply put, the ALJ erred because his opinion is not based on evidence of
> record. The evidence of record, including evidence indicated by the ALJ
> shows that Plaintiff should be found disabled due to extreme back pain and
> compression of a nerve root caused by spinal stenosis. The ALJ here failed
> to find by substantial evidence that the Plaintiff is not disabled.

Id. at 20.

Plaintiff similarly argues the ALJ mischaracterized the extent of his daily activities

and did not account "for the many caveats and limitations" he and his wife alleged and

the accommodations he made when doing his activities. Id. 20-21. He argues the ALJ's

findings he could drive, ride his motorcycle, and shop was controverted by his testimony:

> "[back in February] the knee was terrible to even drive," and that even on
> his ride [driving to his attorney's office for the hearing] that day his
> "lumbar support was lacking." Plaintiff further stated that he only rode his
> motorcycle when the pain in his "knee and back will allow" it, and only
> short distances (fifteen miles). When asked if he went shopping, Plaintiff
> stated that he got curbside pickup and used the electric scooters to get
> around in Walmart, noting that this was embarrassing.

Id. at 21 (citations omitted) (citing R. 43-45).

In her response brief, the Commissioner understands Plaintiff to argue that an ALJ

must cite record evidence supporting each limitation in the RFC assessed. She argues the

Tenth Circuit has no such requirement. (Comm'r Br. 12-13) (citing Howard v. Barnhart,

379 F.3d 945, 949 (10th Cir. 2004); Hill v. Astrue, 289 F. App'x 289, 293 (10th Cir.

2008)).

The Commissioner argues that in Plaintiff's arguments relating to evaluation of his

allegations of disabling symptoms he conflates the level of discussion required in

discounting a claimant's allegations and the standard of review the court applies.

(Comm'r Br. 13).  The Commissioner argues the level of discussion required of an ALJ is

enough that the reviewing court might discern the ALJ's reasoning.  Id. (citing T-Mobile

South, LLC v. City of Roswell, Ga., 135 S. Ct. 808, 815 (2015); Davis v. Erdmann, 607

F.2d 917, 918 n.1 (10th Cir. 1979) (quoting Bowman Transportation, Inc. v. Arkansas-

Best Freight System, Inc., 419 U.S. 281, 285-86, 195 S. Ct. 438, 442 (1974)).

    She argues the court must review the administrative record and determine whether

substantial evidence supports the ALJ's findings.  She argues, "It is therefore a

misstatement of the standards applicable to this case to suggest the ALJ must himself

support his findings with substantial evidence."  Id. at 14.  The Commissioner argues

application of the correct standard reveals the ALJ's discounting of Plaintiff's allegation

of symptoms is supported by substantial evidence.  She argues,

> Plaintiff complained of some back pain in May 2020, the month he claims
> to have become disabled, but by his next visit in July 2020 his pain was
> down to two out of 10 ([R]. 378, 415).  From that point on, examinations
> sometimes revealed some tenderness and an antalgic gait ([R]. 393-94,
> 417), but otherwise were normal with no tenderness and a normal gait ([R].
> 381-82, 615).  Throughout the relevant period, Plaintiff always maintained
> full range of motion, full strength in both upper and lower extremities, fully
> intact motor functioning, normal deep tendon reflexes, and had no sensory
> loss ([R]. 381-82, 393-94, 417, 615).  He reported significant relief from
> injections and medication ([R]. 409, 415).  Both state agency physicians
> that reviewed the medical record agreed that Plaintiff could perform light
> work with postural restrictions ([R]. 64-66, 74-75).  The ALJ found their
> conclusions persuasive—a finding not challenged on appeal—and no
> healthcare professional opined that Plaintiff had any greater restrictions.
> Thus, the medical evidence stood in direct conflict with Plaintiff's claims of
> debilitating symptoms and provided more evidence than required under the
> substantial-evidence standard to affirm the ALJ's findings.

(Comm'r Br. 14-15).  The Commissioner also argues the ALJ's findings respecting

Plaintiff's daily activities and conservative treatment are supported by record evidence

and inconsistent with Plaintiff's allegations of disabling symptoms.

### A.    Standard for Evaluating a Claimant's Allegations of Disabling Pain

The framework for a proper credibility determination[3] is set out in Luna v. Bowen,

834 F.2d 161 (10th Cir. 1987).  An ALJ must consider (1) whether the claimant has

established a symptom-producing impairment by objective medical evidence; (2) if so,

whether there is a "loose nexus" between the proven impairment and the claimant's

subjective allegations of pain; and (3) if so, whether, considering all the evidence, both

objective and subjective, the claimant's symptoms are in fact disabling.  See, Thompson

v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (explaining the Luna framework).  The

Commissioner has promulgated regulations suggesting relevant factors to be considered

in evaluating credibility:  Daily activities; location, duration, frequency, and intensity of

symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness,

and side effects of medications taken to relieve symptoms; treatment for symptoms;

---

[3] Luna, Thompson, and Kepler, were decided when the term used to describe the
evaluation of a claimant's allegations of symptoms resulting from her impairments was
"credibility determination."  Although that term is no longer used, the applicable
regulation never used that term and the procedure for evaluating a claimant's allegations
of symptoms has not significantly changed.  Revisions to Rules Regarding the Evaluation
of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,871 (Jan. 18, 2017) (codified at 20 C.F.R.
§ 404.1529).  Moreover, the Tenth Circuit held its approach to credibility determination
was consistent with the approach set forth in Soc. Sec. Ruling (SSR) 16-3p. Brownrigg v.
Berryhill, 688 Fed. App'x. 542, 546 (10th Cir. 2017).  Therefore, the three-step
framework set out in Luna, based on 20 C.F.R. § 404.1529 (2017) is still the proper
standard to be used as explained in the regulations in effect on September 28, 2021, when
this case was decided.

measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms.  20 C.F.R. § 404.1529(c)(3)(i-vii). The court has recognized a non-exhaustive list of factors which overlap and expand upon the factors promulgated by the Commissioner.  Luna, 834 F.2d at 165-66.  These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).

The court's review of an ALJ's evaluation of a claimant's allegations of symptoms is deferential.  Such evaluations are generally treated as binding on review.  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983).  They "are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence.  Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.

## B.    The ALJ's Findings Respecting Plaintiff's Allegations of Symptoms

The ALJ stated he had considered Plaintiff's allegations of symptoms in accordance with 20 C.F.R. § 404.1529 and SSR 16-3p.  He explained:

> In considering the claimant's symptoms, I must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or

laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, I must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, I must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

(R. 14-15).

The ALJ summarized Plaintiff's symptoms and their alleged effects:

Specific symptoms include pain in his lower back that intermittently radiates to his lower extremities, muscle aches, weakness, arthralgias/joint pain, and muscle spasms (Exhibits 5E; 11E; 1F/7; 8F/7; and hearing testimony). These symptoms allegedly affect the claimant's ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, and use his hands (Exhibits 5E and 11E). He reported that when his pain started in his low back that he purchased an electrical scooter to help him get around (See Exhibits 5E; 1F/22; and hearing testimony). However, it does not appear the claimant has needed the scooter during the relevant period. At the hearing, he testified that he could walk no more than 50 feet, stand for no more than 15 minutes at a time, to sit for approximately 26 minutes at a time, and to lift no more than twenty-five pounds at a time. In fact, the claimant testified that he was given a 25-pound weight restriction by his doctor. Yet, there is no record of such a restriction (See Exhibits 1F; 3F; 4F; 7F; and 8F). The claimant also testified that he had to stop working due to inability to stand and/walk for long periods, and that bending over exacerbated his pain.

(R. 15).

The ALJ found Plaintiff's activities of daily living do not suggest he has significant physical limitations. Id. He found Plaintiff's impairments could cause the symptoms alleged but Plaintiff's allegations are not entirely consistent with the record

evidence.  Id.  He found the objective medical evidence showed findings consistent with

Plaintiff's impairments but it does not suggest disabling functional limitations.  (R. 15-

16).  He found that clinically Plaintiff

> has not presented with a persistent pattern of chronic motor, sensory,
> strength, or reflex deficits reasonably consistent with his allegations.
> Physical examinations generally showed only mild to moderate
> abnormalities including tenderness in the low back (Exhibits 1F/8; 3F/10;
> 4F/30; and 8F/8).  On the other hand, the claimant routinely exhibited
> normal strength and tone, normal gait and station, normal coordination, and
> normal movement of all extremities.

Id. at 16.  He found the "conservative nature and limited amount of treatment" Plaintiff

has received do not support his allegations of disabling symptoms.  Id.  He noted that

Plaintiff is obese and he had considered that fact in assessing RFC and Plaintiff's

allegations.  Id.

The ALJ explained his finding the state agency medical consultants' opinions

partially persuasive and his finding Plaintiff's allegations inconsistent with the record

evidence:

> Overall, both Drs. Torres and Backlund's opinions are partially persuasive
> in that the record including objective data showing degeneration in the
> claimant's lumbar spine and clinical findings of tenderness in his back does
> support a restriction to light exertion level work and the need for additional
> postural limitations.  Indeed, their opinions are generally supported by and
> consistent with the record as a whole.  As State [sic] agency consultants,
> Drs. Torres and Backlund are familiar with the disability determination
> process and the regulations, including the terms of art and legal and
> medical standards set forth therein.  In addition, Drs. Torres and Backlund
> based their opinions on comprehensive reviews of the record, and their
> opinions are supported by detailed narratives explaining what evidence they
> relied upon in reaching their conclusions.  While both their postural
> opinions are generally persuasive, I have adopted a combination of their
> opinions relating to postural limitations.  For example, I did find support in
> the record for occasional stooping, kneeling, and crouching, but never

14

climbing ladders, ropes, and scaffolds, due to the claimant's complaints of pain bending or picking stuff off the ground.  Nevertheless, the claimant's ability to continue to do activities of daily living such as household chores, shopping in stores, and driving supports ongoing ability to perform some postural functions.  However, Dr. Backlund's frequent balancing [limitation] is unsupported by the record.  Indeed, the claimant's physical examination findings routinely showed normal gait and station and coordination, which does not support any balancing deficits.  Thus, overall Drs. Torres and Backlund's opinions are partially persuasive as discussed above.

In summary, the claimant's allegations of total disability are out of proportion with the medical and other evidence of record.  Nevertheless, I find the claimant's impairments require a reduction of the residual functional capacity.  I have determined the claimant's residual functional capacity based on the entire record, including the objective medical findings in the record, the clinical signs and findings on examination and the claimant's partially consistent testimony.  Considering all relevant factors, I find that claimant's subjective complaints did not warrant any additional limitations beyond those established in the residual functional capacity previously outlined in this decision.

(R. 18-19).

## C. **Analysis**

Plaintiff's argument that the ALJ's citation to Exhibit 1F/8 is an example of the

ALJ's failure to connect the dots between the evidence and his conclusions because it is

unpersuasive and provided without context and "does not say that Plaintiff has normal

gait and station, instead, it states directly that Plaintiff suffers from 'neurogenic

claudication,' and the narrative indicates that he has returning pain in his back, constant

throbbing pain, muscle tenderness, and indicates that he is taking at least seven

medications for back pain," while technically correct, is without merit because it

misunderstands the ALJ's decision.  Exhibit 1F/8 is part of a treatment of a visit on May

13, 2020, is cited twice in the decision at issue, and in both cases it is cited along with

other evidence supporting the finding asserted by the ALJ.  The first citation is on page 4

of the decision wherein the ALJ asserts, "the clinical findings in the record do not support

any lower extremity strength, sensation, range of motion, or gait deficits."  (R. 13) (citing

Exhibits 1F/8; 3F/10; 4F/30; and 8F/8).  As Plaintiff argues Exhibit 1F/8 does not show

normal gait and station and as the ALJ asserts it does not support "lower extremity

strength, sensation, range of motion, or gait deficits."  The other citation to Exhibit 1F/8

appears on page 7 of the decision for the proposition, "Physical examinations generally

showed only mild to moderate abnormalities including tenderness in the low back."  Id. at

16 (citing Exhibits 1F/8; 3F/10; 4F/30; and 8F/8).  The records cited support the ALJ's

proposition.  Plaintiff makes much of his reports of pain, the medications he has taken for

pain, and of a diagnosis of "neurogenic claudication" in the treatment note at issue.  (Pl.

Br. 17) (quoting R. 376).  However, Plaintiff ignores the rest of the evidence cited by the

ALJ in support of his assertion and does not explain the significance of "neurogenic

claudication" nor demonstrate its severity in this case or point to any evidence suggesting

it is of greater significance than a mild or moderate abnormality.  Further, the court's

review does not find evidence that the problem is of greater significance than mild or

moderate or that this particular issue received any specific treatment.  Finally, the court

notes Plaintiff's medical history cited at the beginning of the treatment note.

> 59-year-old male presents with complaints of low back pain.  Pain is
> constant, throbbing and aching at his low back.  He is a high school shop
> teacher at Topeka high but is planning on resigning this summer to stay at
> home with his wife.  He denies any radiating pain down his legs and denies
> any weakness or numbness.  Pain is constant, throbbing and aching at his
> low back. [sic].  At his visit on 11/13/201[9] he underwent a lumbar

epidural steroid injection which provided nearly 100% relief however the pain is slowly started [sic] to return.

(R. 375).

Plaintiff's citation to the <u>Bryant</u> case for the proposition that this case should be remanded for selectively viewing or misrepresenting evidence is without merit.  As Plaintiff points out, the <u>Bryant</u> case was remanded because the ALJ in that case used certain MRI evidence bolstering the decision while ignoring other evidence from the same MRI which was contrary to his findings.  753 F. App'x at 641.  Here however, Plaintiff does not identify what evidence he believes the ALJ ignored.  While this record does include MRI evidence, it is not clear what evidence Plaintiff is alleging the ALJ ignored or misrepresented and the court does not find any.  Plaintiff has shown no error in the ALJ's alleged selective reading of the evidence.

Plaintiff's argument is not so much that the ALJ erred in assessing RFC, but that he failed properly to evaluate Plaintiff's allegations of disabling pain.  He argues the ALJ did not apply the three-step standard for evaluating allegations of pain and implies the ALJ did not give specific reasons for rejecting Plaintiff's allegations of pain and, as a consequence, the RFC assessed does not reflect the limitations Plaintiff alleges.  Plaintiff's argument the ALJ did not apply the three-step standard for evaluating pain is without merit.  As quoted above, the ALJ explained that he applied the Commissioner's two-step process to evaluate Plaintiff's allegations.  (1) Whether Plaintiff has impairment(s)—that could produce Plaintiff's pain.  (2) Whether Plaintiff's allegations of pain are substantiated by the objective medical evidence, or if not—by the other record

17

evidence.  (R. 14-15).  As noted above, the Tenth Circuit's formulation of the standard relates three steps; (1) whether Plaintiff has a symptom-producing impairment; (2) whether there is a "loose nexus" between the impairment and Plaintiff's allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Plaintiff's symptoms are disabling.  <u>Thompson</u>, 987 F.2d at 1488.  Although the two statements of the standard use different language—the ALJ portrays the process as two-steps, and the <u>Thompson</u> court portrays it as three-steps, they clearly involve the same evaluation stated in different words.  The first step in the ALJ's process encompasses both the first and second steps of the Tenth Circuit's standard.  Plaintiff's impairment(s) <u>could</u> produce the pain alleged.  If the impairment(s) could not produce the alleged pain there is no nexus between the impairment(s) and the alleged pain; if the impairment(s) <u>could</u> produce the pain alleged, there is at least a loose nexus between the impairment(s) and the alleged pain.  The second step in the ALJ's process encompasses the third step of the Tenth Circuit's standard, considering all the evidence, both subjective and objective, to determine whether the alleged pain is in fact disabling.  The process used by the ALJ considers first the objective evidence, but if that evidence does not substantiate the pain is disabling as alleged, the ALJ must consider the subjective evidence.  Plaintiff has not shown the ALJ failed to apply the correct legal standard.

Moreover, contrary to Plaintiff's argument the ALJ provided reasons for discounting Plaintiff's allegations of disabling symptoms.  Although an ALJ need not show error in the alleged severity of <u>each</u> symptom alleged by Plaintiff, he must provide reasons for discounting Plaintiff's allegations.  The first inconsistency relied upon by the

ALJ was Plaintiff's allegation his doctor restricted him to lifting 25 pounds, but "there is no record of such a restriction."  (R. 15).

The ALJ found inconsistencies between Plaintiff's activities of daily living and his allegations of disabling pain:

> Overall, the claimant's descriptions of his daily activities are not limited to the extent one would expect to associate with disabling physical impairments.  His activities are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations that preclude him from work activities.  Although the claimant may not be able to engage in all of the activities that he did in the past and it may take him longer to perform the task, he is more active than would be if all his allegations were consistent.

(R. 15).  Plaintiff's contrary argument misses the point of the ALJ's analysis and the burden of proof in establishing RFC.  Plaintiff argues the ALJ points to no evidence proving his daily activities are sufficient to perform substantial gainful activity.  (Pl. Br. 20).  But it is not the agency's burden to prove Plaintiff can perform work it is Plaintiff's burden to prove his limitations.  Moreover, the point of the ALJ's finding is not that Plaintiff's activities demonstrate his ability to work but that his activities are inconsistent with his alleged pain symptoms.  Moreover, Plaintiff's self-serving arguments regarding his daily activities do not indicate disabling limitations.  His testimony that in February his knee was terrible even to drive indicates that he is able to drive even with an allegedly "terrible" knee and ignores the ALJ's finding that his knee problems are either not medically determinable or are not a severe impairment.  (R. 13).  His testimony that "lumbar support was lacking" on the drive over to his attorney's office says nothing about an inability to drive or about the level of his pain but only that his

automobile/truck/motorcycle does not provide the lumbar support he would like.  Finally, his testimony that he only rode his motorcycle when the pain in his "knee and back will allow" it, and only short distances (fifteen miles) is more supportive of the ALJ's finding than of Plaintiff's allegation of disabling pain radiating from his low back into his legs.

Plaintiff claims error in the ALJ's consideration of the level of treatment, arguing his characterization of Plaintiff's treatment as conservative is at best an understatement. (Pl. Br. 19).  He argues this is so because he has had "a litany of consistent treatment including physical therapy, medications and injections, as well as contemplating surgery." Id.  However, with the exception of surgery, that is all consistent with conservative treatment.  Moreover, the ALJ noted that "during the relevant period, the claimant did not undergo any physical therapy treatment." (R. 16).  Further, the record does not suggest that any medical source recommended surgery.  While Plaintiff relies on hearing testimony to suggest he had contemplated surgery, it does not suggest a medical source contemplated surgery.  The hearing transcript reveals the ALJ asked if "any doctor suggested or offered any sort of surgery?" (R. 49). Plaintiff responded, "Dr. Guam said surgery is the last resort because it's not always successful and sometimes, when it's not successful, you're worse off than when the surgery began." Id.  While this exchange may indicate Plaintiff had contemplated surgery, it clearly indicates Dr. Guam was not recommending it because they were not at the last resort.  It certainly does not demonstrate that Dr. Guam suggested or offered surgery.

Plaintiff also claims error in the ALJ's finding that after having lumbar epidural spinal injections Plaintiff "reported improvement in his pain symptoms for months at a time," arguing

> that Plaintiff received a new injection on a regular basis since October of 2019, including on October 11, 2019 (Tr. 393), November 13, 2019 (Tr. 388), and December 11, 2019 (Tr. 383), and while Plaintiff did get some relief from back pain, he continued to need medication, including pain killers and psychoactive drugs (hydrocodone, gabapentin) as well as pain relief cream every day.

(Pl. Br. 19).  Plaintiff misstates the evidence as it relates to the injections.  The record reflects that on October 11, 2019 Plaintiff presented to Dr. Gaume at the Pain Management Center reporting low back pain with radiation into both hips starting in August.  (R. 390).  "Pain became so severe he purchased an electric scooter."  Id. Plaintiff reported that in September he was lifting the scooter and swinging it into his trunk when he felt a sudden onset of low back pain which worsened thereafter.  Id.  A steroid injection was given.  Id. 397-98.  On November 13, 2019 Plaintiff returned to Dr. Gaume and reported that the October injection "provided significant relief" but two days before he noticed the pain had returned when he was out on a short car ride.  Id. 385. Plaintiff returned to Dr. Gaume on December 11, 2019 reporting "that he feels 'great.'  'I have no pain at all,'" and that the injection in November provided significant relief.  Id. 380.  Although the record of that visit notes at one point Dr. Gaume's attestation, "I have explained the procedure, principal risk(s), benefit(s), and alternative(s) to the patient/advocate" and "The sedation plan and principal risk(s)/complication(s) have been discussed," id. at 383, there is no indication an injection was given and there is no

indication fluoroscopy was used for needle insertion.  Id. at 380-84.  The next record of a

lumbar epidural steroid injection shows Plaintiff presented to Dr. Gaume on May 13,

2020 complaining of low back pain once again.  Id. 375.  The record notes that the

injection on November 13, 2019[4] "provided nearly 100% relief however the pain is

slowly started [sic] to return."  Id.  Plaintiff was given an injection during the May 13,

2020 visit and the record does not reflect any further injections in medical records

through February 2021.  (R. 400-629).

Plaintiff's reference to the pain medications he has taken also misses the point of

the ALJ evaluation of Plaintiff's allegation.  First, the question in not whether a claimant

can work without pain but whether the level of pain is so great as to be disabling.

Moreover, while gabapentin is a neurogenic pain reliever, it is not a psychoactive drug.

As a narcotic pain reliever, hydrocodone is a strong pain reliever and its use must be

given serious consideration by an ALJ.  That is what the ALJ did here.  He noted that

Plaintiff had been prescribed hydrocodone but that, "Most recently, the claimant was

prescribed Tylenol/acetaminophen, diclofenac topical gel, gabapentin, and ibuprofen to

treat his pain."  Id. at 16.  Further, the ALJ noted Plaintiff had undergone no physical

therapy treatment during the relevant period.  Plaintiff has shown no error in the ALJ's

characterization of his treatment as conservative.

---

[4] The record reflects the date of this injection was 11/13/2018.  (R. 375).  However, the
record reflects the first consultation with Dr. Gaume occurred on October 11, 2019 and
Plaintiff was given the earlier injections on October 11, and November 13, 2019.  The
court finds the reference to 11/13/2018 is a typographical error.

In conclusion, Plaintiff has not met his burden to show error in the ALJ's evaluation of his allegations of symptoms or in the RFC assessed.  As is usually the case in a Social Security disability case record there is evidence supporting a finding of disability and evidence supporting finding otherwise.  Because the record contains such relevant evidence as a reasonable mind might accept as adequate to support the ALJ's conclusion, and Plaintiff does not cite record evidence compelling a contrary conclusion the court must affirm the Commissioner's final decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated June 13, 2023, at Kansas City, Kansas.


 s/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**